UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY ZAGAMI, BRIAN KELLY, AND RICK PATMORE, on behalf of themselves and all others similarly situated, | § § § | |
| | § | |
| Plaintiff(s), | § | Civil Action No.: 3-06-CV-1654-D |
| | § | |
| v. | § | ECF |
| | § | CLASS ACTION |
| NATURAL HEALTH TRENDS CORP., MARK D. WOODBURN, TERRY L. LaCORE, and RANDALL A. MASON, | § § § § | |
| | § | |
| Defendants. | § | |

# DEFENDANTS WOODBURN AND LACORE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

24566.1 (89490/005)

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   DEFENDANTS HAD NO DUTY TO DISCLOSE THE ALLEGEDLY
      UNDISCLOSED FACTS ........................................................................................... 1

III.  THE ALLEGEDLY UNDISCLOSED FACTS WERE NOT MATERIAL ............... 1

IV.   PLAINTIFFS HAVE NOT PLEADED THE REQUISITE STRONG
      INFERENCE OF SCIENTER AS TO WOODBURN OR LACORE .................... 4
      A.   Knowledge Of The Transactions Is Insufficient To Plead A Strong
           Inference Of Scienter .......................................................................................... 5
      B.   Plaintiffs Fail To Plead A Strong Inference That Woodburn Or LaCore
           Were Aware Of A Danger Of Misleading Investors ....................................... 6
           1.   Plaintiff Do Not Plead Facts Demonstrating That Woodburn Lied
                to NHTC's Auditors, And The Facts They Do Plead Give Rise To
                A Stronger Inference Of Nonculpable Conduct ....................................... 6
           2.   The Signing Of Sarbanes-Oxley Certifications Does Not Give Rise
                To A Strong Inference Of Scienter ............................................................ 8
           3.   The Termination of Woodburn And LaCore Does Not Give Rise To
                A Strong Inference Of Scienter ................................................................. 9
           4.   NHTC's Prior, Unrelated Restatements Do Not Give Rise To A
                Strong Inference Of Scienter ................................................................... 10
           5.   LaCore's Testimony Does Not Give Rise To A Strong Inference Of
                Scienter ...................................................................................................... 10

V.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ......................................... 12

VI.   THE CONTROL-PERSON CLAIMS FAIL .......................................................... 12

VII.  CONCLUSION ........................................................................................................ 13

## **TABLE OF AUTHORITIES**

**CASES**

*Abrams v. Baker Hughes, Inc.*, 292 F.3d 424 (5th Cir. 2002) ........................................................... 10

*Ayers v. Oil, Chem. & Atomic Workers Intern. Union, AFL-CIO*, 1999 WL 615083 (N.D. Tex. 1999) ........................................................................................................................................... 11

*Carlson v. Xerox Corp.*, 392 F. Supp. 2d 267 (D. Conn. 2005) ......................................................... 12

*Fener v. Belo Corp.*, 425 F. Supp. 2d 788 (N.D. Tex. 2006) ............................................................. 10

*Garfield v. NDC Health Corp.*, 466 F.3d 1255 (11th Cir. 2006) ......................................................... 9

*In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478 (N.D. Cal. 2002) ...................................... 10

*In re Lattice Semiconductor Corp. Sec. Litig.*, 2006 WL 538756 (D. Or. 2006) ............................... 9

*In re OCA, Inc. Sec. and Deriv. Litig.*, 2006 WL 3747560 (E.D. La. 2006) ...................................... 9

*In re Stellent, Inc. Sec. Litig.*, 326 F. Supp. 2d 970 (D. Minn 2004) ................................................. 8

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996) ............................................... 10

*Milano v. Perot Sys. Corp.*, 2006 WL 929325 (N.D. Tex. Mar. 31, 2006) ..................................... 5, 6

*S.E.C. v. Musella*, 748 F. Supp. 1028 (S.D.N.Y. 1989) .................................................................... 12

*S.E.C. v. Todd*, 2007 WL 1574756 (S.D. Cal. May 30, 2007) ............................................................ 3

*Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587 (N.D. Tex. 2004) .................................................... 2

*Tellabs Inc. v. Makor Issues & Rights, Ltd*, 127 S. Ct. 2499 (2007) .............................................. 7, 8

*United States V. Meyer*, 733 F.2d 362 (5th Cir. 1984) ...................................................................... 12

DEFENDANTS WOODBURN AND LACORE'S REPLY BRIEF                                  Page ii
IN SUPORT OF MOTION TO DISMISS

24566.1 (89490/005)

## I. INTRODUCTION

Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition") does not succeed showing that the transactions in question were required to be disclosed or, if they were, that there was any scienter involved in the failure to disclose them. As demonstrated in Defendants Woodburn and LaCore's Motion to Dismiss ("Motion"), the information that Plaintiffs claim should have been disclosed would not have been material to a reasonable investor. Nor does the Complaint plead facts giving rise to a strong inference that Woodburn and LaCore were severely reckless in failing to disclose the transactions at issue. The failure to show materiality and scienter each individually require dismissal of the Complaint.

## II. DEFENDANTS HAD NO DUTY TO DISCLOSE THE ALLEGEDLY UNDISCLOSED FACTS

As demonstrated in Defendants Natural Health Trends Corporation and Randall A. Mason's Motion to Dismiss, the Star Search payments and the alleged $256,000 loan to an entity owned by Woodburn's parents were not required to be disclosed under Item 404 because they were not material in amount to the Company. Woodburn and LaCore hereby join in and incorporate NHTC's and Mason's arguments in their reply brief further demonstrating why there was no duty to disclose under Item 404.

## III. THE ALLEGEDLY UNDISCLOSED FACTS WERE NOT MATERIAL

As demonstrated in the Woodburn and LaCore's Motion, the transactions at issue would not be material to a reasonable investor because (i) the small size of the transactions makes them immaterial as a matter of law and (ii) the alleged nondisclosure of the transactions did not affect NHTC's financial statements. (*See* Mot. at 5-7.)

In their Opposition, Plaintiffs do not contend that the size of the transactions would have made them material to a reasonable investor. Plaintiffs do not dispute that the size of the

transactions are even smaller – on both an absolute and percentage basis – than those held immaterial by Judge Godbey in *Hotels.com*. (*See* Mot. at 5-6.) *Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 593-94 (N.D. Tex. 2004). Nor do Plaintiffs contend that the nondisclosure of the transactions in any way affected NHTC's balance sheet, income statement or statement of cash flows: the information reasonable investors consider in assessing the profitability and business prospects of a company.

Instead, Plaintiffs appear to seek adoption of a special rule for related-party transactions, asking the Court to hold that all related-party transactions are *per se* material regardless of their size or whether reasonable investors would view them as having significantly altered the total mix of information. Not surprisingly, Plaintiffs do not cite a single case for the proposition that the materiality standard for section 10(b) is somehow different when the alleged omission is a related-party transaction.

Plaintiffs' sole effort to explain why there should be a special materiality rule is to argue that disclosure of related-party transactions would be important to inform investors that Woodburn and LaCore "had the ability to dominate and control the company." (Opp'n at 14.[1]) As an initial matter, this argument (and the inflammatory assertion that "two top officers were treating the Company as their own personal piggy-bank" (Opp'n at 17)) is inapplicable to the facts as alleged in the Complaint. And as Plaintiffs themselves concede, "there are no allegations

---

[1] Plaintiffs also make a baseless, inflammatory assertion that the loan from NHTC to an entity controlled by Woodburn's parents was illegal under Sarbanes-Oxley. (Opp'n at 15-16.) As Plaintiffs themselves recognize, the loan was not made to Woodburn, so it cannot fall under the terms of the prohibition on loans to officers. (Opp'n at 15-16.) The fact that Woodburn is alleged to have repaid the loan does not convert it into a loan to him.

that Woodburn and LaCore looted NHTC," "[n]or does the [Complaint] make any allegations that the payments constituted stealing from NHTC." (Opp'n at 29, 34.[2])

In addition, Plaintiffs' argument ignores that the materiality of an omitted fact must be assessed in light of the total mix of information available to investors, not on a stand-alone basis. As one court recently explained:

> In applying the standard under *Basic*, it is important to keep in mind the key phrase "total mix of information". This means not that a fact when viewed in isolation might have been important to an investor, but that when taken into account with all the other information available, it would have altered that " total mix". In other words, the question is not, "if a reasonable investor knew x, and only x, would that significantly affect her thinking about investing in this security?" The proper question in viewing materiality is "if a reasonable investor knew a, b, c, d, e, f, g, and now also x, would that significantly affect her thinking about investing in this security?" In a case such as this one, with intense focus on several transactions, it is easy to lose sight of that critical distinction set out by the Supreme Court in *Basic*.

*S.E.C. v. Todd*, 2007 WL 1574756, at *3 (S.D. Cal. May 30, 2007) (granting defendants' motion for judgment as a matter of law).

Here, Plaintiffs allege that NHTC, Woodburn and LaCore disclosed a number of related party transactions in NHTC's public filings during the putative class period. (*See* Compl. ¶¶ 52, 63, 72.) More specifically, Plaintiffs allege that:

- NHTC's February 2003 Proxy disclosed a consulting agreement between NHTC and Benchmark Consulting Group, which is owned by Woodburn;
- NHTC's February 2003 Proxy disclosed an options agreement between NHTC and Benchmark Consulting Group, which is owned by Woodburn;

---

[2] Plaintiffs make a number of other similarly inconsistent arguments. Plaintiff suggest that the payments would have been material because they were somehow improper, citing two SEC enforcement actions for the proposition that illegal payments are material. (*See* Opp'n at 16.) As Plaintiffs concede elsewhere in their Opposition, however, "[o]ne can logically infer that the payments themselves were perfectly legal." (Opp'n at 28.) Plaintiffs also make a vague assertion that the "egregious manner" in which Woodburn and LaCore replaced distributors "was highly detrimental to the Company." (Opp'n at 17.) Plaintiffs elsewhere argue, however, that this replacement "redounded directly to NHTC's benefit" and furthered NHTC's interests. (Opp'n at 29.)

- NHTC's February 2003 Proxy disclosed an options agreement between NHTC and LaCore;
- NHTC's April 2003 Proxy disclosed a consulting agreement between NHTC and Benchmark Consulting Group, which is owned by Woodburn;
- NHTC's April 2003 Proxy disclosed an options agreement between NHTC and Benchmark Consulting Group, which is owned by Woodburn;
- NHTC's April 2003 Proxy disclosed an options agreement between NHTC and LaCore;
- NHTC's April 2003 Proxy disclosed NHTC's purchase of software from MarketVision, Inc., a company alleged to be partially owned by Woodburn;
- NHTC's 2004 Annual Report disclosed a property lease between NHTC and LaCore's brother;
- NHTC's 2004 Annual Report disclosed a consulting agreement between NHTC and Woodburn's father;
- NHTC's 2004 Annual Report disclosed payments to Woodburn's wife who was an NHTC employee;
- NHTC's 2004 Annual Report disclosed NHTC's acquisition of MarketVision, Inc., a company alleged to be owned by Woodburn.

(Compl. ¶¶ 52, 63, 72.)

These disclosures were part of the total mix of information, and Plaintiffs have not shown that there is a substantial likelihood that disclosure of the transactions at issue here would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information.

## IV. PLAINTIFFS HAVE NOT PLEADED THE REQUISITE STRONG INFERENCE OF SCIENTER AS TO WOODBURN OR LACORE

As described in the Woodburn and LaCore's Motion, the Complaint fails to plead a strong inference of scienter as to Woodburn and LaCore because it does not allege specific facts demonstrating either conscious intent to mislead investors or severe recklessness. (*See* Mot. at 7-10.) More specifically as to recklessness, the Complaint does not plead facts showing that it would have been severely reckless to conclude that the Star Search payments were not related-party transactions, nor does it plead facts showing that it would have been severely reckless to

DEFENDANTS WOODBURN AND LACORE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS                                                                                                  PAGE 4

conclude that the transactions were not material. (Mot. at 8-10.) Without such facts, there is no basis to find severe recklessness – i.e., that if not revealed, the omitted information presented a danger of misleading buyers or sellers that was either known to Woodburn or LaCore or so obvious that they must have been aware of it. *See Milano v. Perot Sys. Corp.*, 2006 WL 929325, at *14, 18 (N.D. Tex. Mar. 31, 2006).[3]

As an initial matter, Plaintiffs mischaracterize Woodburn and LaCore's argument regarding the related nature of the Star Search payments. Contrary to Plaintiffs' suggestion (Opp'n at 18), Woodburn and LaCore did not argue that the Star Search payments were not related-party transactions. The argument is that Plaintiffs have not shown that it would have been severely reckless to conclude that the Star Search payments were not related-party transactions. (Mot. at 8.[4]) In their effort to show that the payments were, in fact, related-party transactions, Plaintiffs resort to arguments about "indirect" interests and that the form of transactions should be disregarded to fit their economic substance. But such involved interpretations of the transactions only underscore that lay persons such as Woodburn and LaCore would not have been severely reckless in simply failing to conclude, understand or realize that the payments met the legal definition of a related-party transaction.

### A. Knowledge Of The Transactions Is Insufficient To Plead A Strong Inference Of Scienter

Plaintiffs argue that "[a]ctual knowledge of the related party payments is sufficient to demonstrate scienter." (Opp'n at 22.) This argument is unavailing, as it is directly contrary to

---

[3] Plaintiffs mischaracterize Woodburn and LaCore as arguing that they intended to deceive NHTC and its auditors only, and not investors. (*See* Opp'n at 26.) Woodburn and LaCore made no such argument.

[4] NHTC's "admissions" (Opp'n at 18-19) are therefore irrelevant. That NHTC concluded in 2006 that the payments constituted related-party transaction has no bearing on whether Woodburn and LaCore would have been severely

this Court's holding in *Perot Systems*. (*See* Mot. at 7-8.) In *Perot Systems* this Court recognized that "even assuming that plaintiffs have adequately pleaded that such a person had actual knowledge of a particular fact and did not disclose it, this of itself is insufficient to raise a strong inference of scienter." *Perot Sys.*, 2006 WL 929325 at *14.

### B. Plaintiffs Fail To Plead A Strong Inference That Woodburn Or LaCore Were Aware Of A Danger Of Misleading Investors

Apparently recognizing that knowledge of the alleged related party payments is *not* sufficient to plead a strong inference of scienter, Plaintiffs next resort to a series of circular, inflammatory, conclusory and irrelevant assertions in an attempt to show that Woodburn and LaCore were aware of a danger of misleading investors. (*See* Opp'n at 23-27.) None of these arguments withstands scrutiny, and none is sufficient to raise a strong inference of scienter.

#### 1. Plaintiffs Do Not Plead Facts Demonstrating That Woodburn Lied to NHTC's Auditors, And The Facts They Do Plead Give Rise To A Stronger Inference Of Nonculpable Conduct

Plaintiffs argue that they have pleaded scienter because Woodburn allegedly "intentionally lied to NHTC's auditors" by signing "knowingly false management representation letters." (Opp'n at 23-24.) This argument is circular: Plaintiffs ask the Court to infer that Woodburn knew that he was required to disclose the transactions to investors because he purportedly knew that he was required to disclose them to NHTC's auditors. This argument essentially assumes that which it is Plaintiffs' burden to plead with particularized facts: that Woodburn knew that the transactions were material, related-party transactions that required disclosure. Plaintiffs are not entitled to an any inference of scienter, much less a strong inference, based on a circular argument that Woodburn "knew because he knew."

---

reckless in failing to earlier conclude (or failing to earlier realize) that the payments met the legal definition of a

Moreover, Plaintiffs' argument is premised on the fact that NHTC, Woodburn and LaCore disclosed a number of related party transactions in NHTC's public filings during the putative class period. (*See* Compl. ¶¶ 52, 63, 72; *supra* § III.) Based solely on these appropriate disclosures, Plaintiffs ask the Court to infer that Woodburn was "knowingly concealing material information for the purpose of deceiving NHTC's auditors in connection with their audit work." (Opp'n at 24.)

Plaintiffs' argument is too strained to support a strong inference of scienter, and is outweighed by a stronger inference of non-fraudulent behavior. As the Supreme Court recently clarified, a plaintiff cannot plead the requisite strong inference of scienter by merely alleging facts from which a reasonable factfinder, among several plausible inferences, could infer the requisite state of mind. *Tellabs Inc. v. Makor Issues & Rights, Ltd*, 127 S. Ct. 2499, 2510 (2007). Rather, "a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* The inference of scienter must be at least as strong as the inferences of nonculpable conduct in order for a complaint to plead the requisite strong inference of scienter. *Id.*

Here, the fact that Woodburn and LaCore properly disclosed a number of related party transactions does not suggest that they were intending to hide other transactions. To the contrary, the stronger inference from these facts is that Woodburn's and LaCore's practice was to appropriately disclose related party transactions and that the transactions at issue in this case were not disclosed due to (i) a good faith belief that the payments did not constitute related party

---

related-party transaction.

**DEFENDANTS WOODBURN AND LACORE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**    PAGE 7

transactions and/or (ii) a good faith belief that the payments were not material. Under *Tellabs*, this stronger inference of nonculpable conduct requires dismissal.[5]

In addition, it is worth noting that Plaintiffs plead no facts regarding Woodburn's supposed signing of a representation letter.[6] This failure is particularly relevant in light of the text of the "standard management representation letter" that Plaintiffs attach as Exhibit 4 to the Complaint. (Compl. ¶ 108.) While Plaintiffs claim that such letters required Woodburn to represent that he "had disclosed all related party transactions relevant to the Company and that he was not aware of any other such matters required to be disclosed in the financial statements" (Compl. ¶ 109), the "standard" letter contains no such language. The "standard" letter only states that related party transactions "have been properly recorded or disclosed in the financial statements." (Compl. Ex. 4 at ¶ 10(a).) Plaintiffs do not dispute that the transactions at issue were properly recorded in NHTC's financial statements, so Mr. Woodburn could have accurately signed the hypothetical "standard" representation letter.[7]

### 2. The Signing Of Sarbanes-Oxley Certifications Does Not Give Rise To A Strong Inference Of Scienter

---

[5] Plaintiffs' citation to *In re Stellent* does not help their scienter claim. (Opp'n at 27.) In *In re Stellent*, the company granted an exclusive license to Active IQ three days before a quarter ended and immediately and improperly booked $1.5 million in revenue for that quarter. Certain company insiders then liquidated their Active IQ holdings to avoid alerting investors of their interest in Active IQ. The company then informed the SEC two months later that '[n]o officers and directors of the Company have an ownership or other financial interest in Active IQ.'" *In re Stellent, Inc. Sec. Litig.*, 326 F. Supp. 2d 970, 977 (D. Minn 2004). Thus, unlike here, the well-pleaded facts demonstrated that the defendants actively took steps to mislead investors by affirmatively stating that the transaction was not with a related-party.

[6] Rather than plead facts, Plaintiffs *assume* that Woodburn signed a management representation letter to NHTC's auditors, *assume* that this letter required Woodburn to represent that he had disclosed all related party transactions, and *assume* that Woodburn did not list the transactions at issue in this case. Each of these assumptions further weakens the inference that Plaintiffs ask the Court to draw.

[7] Plaintiffs' further argument that "criminal conduct creates a strong inference of scienter" (Opp'n at 24) is based entirely on the flawed assertion that Woodburn knowingly concealed information from NHTC's auditors and fails for the same reasons.

Plaintiffs similarly claim that Woodburn knowingly signed false Sarbanes-Oxley certifications and that his purported "knowledge of facts contradicting his statements in the Sarbanes-Oxley certifications creates an inference of scienter." (Opp'n at 26.[8]) This argument is once again circular: Plaintiffs ask the Court to infer that Woodburn knew that he was required to disclose the transactions to investors because he purportedly knew that the transactions somehow made the Sarbanes-Oxley certifications inaccurate. Plaintiffs are required to plead facts demonstrating such knowledge.[9] Conclusory assertions, no matter how many times they are repeated, are insufficient to plead scienter.

### 3. The Termination of Woodburn And LaCore Does Not Give Rise To A Strong Inference Of Scienter

Plaintiffs next argue that Woodburn's and LaCore's termination following the audit committee's investigation, and the CEO's reference to "improprieties," demonstrates scienter. (Opp'n at 24-25.) The November 15, 2005 press release that Plaintiffs reference, however, only speaks to the existence of the payments; it says nothing about whether Woodburn or LaCore knew that these payments constituted material related-party transactions that should have been disclosed. (*See* Compl. ¶ 93.) These allegations therefore add nothing to the allegations that

---

[8] Plaintiffs do not and cannot argue that the mere signing of a Sarbanes-Oxley certification gives rise to an inference of scienter. *See, e.g., Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265-66 (11th Cir. 2006) (rejecting argument that signing of Sarbanes Oxley certification was indicia of scienter and holding that "a Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements"). Even the authority cited by Plaintiffs would not support such a claim. *See In re OCA, Inc. Sec. and Deriv. Litig.*, 2006 WL 3747560, at *22 (E.D. La. 2006) ("The Court does not hold that a Sarbanes-Oxley certification, without more, would support a strong inference of scienter under the PSLRA.").

[9] The cases that Plaintiffs cite demonstrate the type of factual allegations that are missing here. In *Lattice Semiconductor*, it was admitted that the CFO, who had signed a certification, had overridden the internal controls to make incorrect and misleading journal entries. *See In re Lattice Semiconductor Corp. Sec. Litig.*, 2006 WL 538756, at *17-18 (D. Or. 2006). In *OCA, Inc*, the company, prior to the class period, had admitted that its internal controls were materially deficient, and a former employee of the accounting department stated that numerous employees, including some outside the accounting group, had the ability to make changes to the company's accounting records without supervision. *See In re OCA, Inc. Sec. and Deriv. Litig.*, 2006 WL 3747560, at *8 (E.D. La. 2006).

Woodburn and LaCore knew about the transactions at issue, which as discussed above are insufficient to show a strong inference of scienter.

### 4. NHTC's Prior, Unrelated Restatements Do Not Give Rise To A Strong Inference Of Scienter

Plaintiffs' next argument -- that Woodburn was the CEO and CFO during two restatements -- does not help them plead scienter. Plaintiffs do not allege that either of those restatements had anything do with related-party transactions. (*See* Compl. ¶¶ 98-102.) Those restatements accordingly have no bearing on the reasonableness or recklessness of concluding that the transactions at issue here did not need to be disclosed.

Plaintiffs' suggestion that the prior restatements help show scienter is also contrary to well-established Fifth Circuit case law, which as this Court has recognized "teach[es] that '[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.'" *Fener v. Belo Corp.*, 425 F. Supp. 2d 788, 808 (N.D. Tex. 2006) (rejecting argument that scienter was established by purported "numerous, repeated, and significant violations of GAAP").[10] If a restatement does not show scienter as to the particular accounting issue being restated, then a restatement can obviously not show scienter as to an unrelated, different issue.[11]

### 5. LaCore's Testimony Does Not Give Rise To A Strong Inference Of Scienter

---

[10] *See also Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1020 (5th Cir. 1996).

[11] Plaintiffs cite an out-of-Circuit case, *In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478 (N.D. Cal. 2002), for the proposition that multiple restatements have a bearing on scienter. (*See* Opp'n at 25.) That case cannot be followed as it is inconsistent with the law of this Circuit. In addition, the *Adaptive Broadband* court was faced with "strong evidence of deliberately reckless accounting," 2002 WL at 989478 at *14, whereas here there is no evidence that Woodburn or LaCore were deliberately reckless in failing to disclose the alleged related-party transactions.

Recognizing that the facts alleged in the First Amended Complaint cannot support an inference that LaCore and Woodburn acted with scienter, Plaintiffs resort to inflammatory tales about LaCore's supposed bad conduct in defending a separate lawsuit. Plaintiffs' unexplained assertion that Mr. LaCore somehow committed perjury in a deposition in another case is without merit and is inadequate to create an inference of scienter here. Plaintiffs' unsupported accusation that LaCore committed the crime of perjury is serious and bears some discussion. *See Ayers v. Oil, Chem. & Atomic Workers Intern. Union, AFL-CIO*, 1999 WL 615083, at *1 (N.D. Tex. 1999) (noting that the accusation of perjury is a serious one and should not be "carelessly strewn about" as "casually as … discussing the weather…"). To clarify, not only has Mr. LaCore never been found to have committed perjury, setting aside Plaintiffs' present attempt to salvage their lawsuit, Mr. LaCore has never even been *accused* of perjury. It is wholly improper for Plaintiffs to suggest to this Court, for their own benefit in this case, that another court has addressed some alleged issue of perjury with respect to Mr. LaCore.

More to the point, Plaintiffs misstate LaCore's supposedly false testimony. Plaintiffs allege that LaCore falsely denied under oath "that he received any payments from Star Search." (Opp'n at 25.) But the complete deposition question cited by Plaintiffs was not whether LaCore received any payments, but whether he received compensation from Steve Francisco or a Steve Francisco-related entity in exchange for the positions Francisco received in Lexxus. (*See* Compl., Ex. 1-G (LaCore Dep.) 65:10-17.) In that colloquy, LaCore denied receiving any compensation as a *quid pro quo* for the positions Francisco received in the Lexxus distribution network. (*See* Compl., Ex. 1-G (LaCore Dep.) 65:10-17.) LaCore maintains in both the other lawsuit and in this case that his testimony was true and, in fact, there was no *quid pro quo* exchange of payments for the Lexxus positions Star Search received. Plaintiffs have alleged no

facts to show that LaCore's sworn statement was false. Plaintiffs' argument that LaCore committed the crime of perjury is nothing more than a false alarm, and it fails to earn Plaintiffs the necessary inference that LaCore acted with the requisite mental state.[12] Plaintiffs ask this Court to make an extraordinary factual and logical leap to conclude that, because LaCore's testimony hurts Plaintiffs' case and is generally disbelieved by Plaintiffs, it must be nothing more than a sworn lie. Plaintiffs have not alleged any specific facts to explain or support their accusation of perjury; such inflammatory rhetoric cannot save their deficient pleading.

## V. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

As demonstrated in Defendants NHTC's and Mason's opening brief, Plaintiffs have not pleaded the essential element of loss causation. For the reasons stated in Defendants NHTC's and Mason's reply brief, Plaintiffs' Opposition does not change the failure of the complaint to plead this required element of a section 10(b) claim.

## VI. THE CONTROL-PERSON CLAIMS FAIL

Plaintiffs do not dispute that their control-person claims against Woodburn and LaCore cannot exist without primary liability under section 10(b). Plaintiffs' failure to establish a primary violation of section 10(b) thus requires dismissal of their section 20(a) claims.

---

[12] The cases cited by Plaintiffs are inapplicable to the naked accusation of perjury here. In all three of Plaintiffs' cases, there was clear and direct evidence that foreclosed any reasonable notion that the defendants' statements could be truthful. In *United States v. Meyer*, unlike here, there were three witnesses who offered sworn testimony showing that the defendant's grand jury statement was false; moreover, the Court found the defendant's statement itself "inherently unbelievable." *United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984). In *Carlson v. Xerox Corp.*, the defendants had represented that they were cooperating with an SEC investigation, and the plaintiffs alleged direct and specific facts showing that they were simultaneously undermining that investigation, thereby leading only to the conclusion that their statements must have been false. *Carlson v. Xerox Corp.*, 392 F. Supp. 2d 267, 284 (D. Conn. 2005). And in *S.E.C. v. Musella*, the defendant in sworn SEC testimony denied even knowing one of the co-defendants, when clear evidence showed that the two men had been friends for over twenty years. *S.E.C. v. Musella*, 748 F. Supp. 1028, 1040 (S.D.N.Y. 1989).

## VII. CONCLUSION

For the reasons stated in the Motion, above, and by NHTC and Mason, Woodburn and LaCore respectfully request that the Court grant their motion to dismiss. Such dismissal should be with prejudice because (i) the deficiencies in the Complaint cannot be cured and leave to amend would be a futile, wasteful exercise (ii) for the reasons stated by NHTC and Mason and (iii) Plaintiffs do not ask for leave to amend if the motions is granted.

July 23, 2007

Respectfully submitted,

/s/ Edwin J. Tomko
Edwin J. Tomko
State Bar No. 20117800
Jason M. Ross
State Bar No. 24027819
CURRAN TOMKO TARSKI LLP
1700 Pacific Avenue
Suite 4545
Dallas, Texas 75201
Telephone: 214.270.1400
Facsimile: 214.270.1401

**Attorneys for Defendant Terry L. LaCore**

/s/ Daniel Gold  by permission
Christopher E. Kirkpatrick
State Bar No. 00791033
Daniel H. Gold
State Bar No. 24053230
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

**Attorneys for Defendant Mark Woodburn**

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing pleading has been served upon its filing via this Court's CM/ECF system or by overnight mail on this 23rd day of July 2007 to the individuals listed below:

Paul R. Bessette
AKIN GUMP STRAUSS HAUER & FELD LLP
300 W. 6th Street, Suite 2100
Austin, Texas 78701
**Attorneys for Defendants Natural Health Trends Corp. and Randall A. Mason**

Christopher E. Kirkpatrick
Daniel H. Gold
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
**Attorneys for Defendant Mark Woodburn**

Thomas E. Bilek
THE BILEK LAW FIRM, L.L.P.
1000 Louisiana Street, Suite 1302
Houston, TX 77002

Christopher S. Hinton
THE HINTON LAW FIRM
350 Fifth Ave., Suite 5508
New York, NY 10118

Phillip Kim
Laurence Rosen
THE ROSEN LAW FIRM, P.A.
350 Fifth Ave., Suite 5508
New York, NY 10118
**Attorneys for Plaintiffs**

_____
Jason M. Ross