IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GARY ZAGAMI,                          §
on behalf of himself and              §
all others similarly situated,        §
                                      §
                    Plaintiffs,       §
                                      §  Civil Action No. 3:06-CV-1654-D
VS.                                   §
                                      §
NATURAL HEALTH TRENDS CORP.,          §
et al.,                               §
                                      §
                    Defendants.       §

MEMORANDUM OPINION
AND ORDER

In this securities fraud action arising from the failure to
disclose certain related-party transactions, the court must decide
whether plaintiffs have adequately pleaded materiality, scienter,
and loss causation.  Concluding that they have (once their proposed
amended complaint is considered), the court denies defendants'
motions to dismiss.

I

Defendant Natural Health Trends Corporation ("NHTC") operates
a multi-level marketing business that offers personal care products
and nutritional supplements.[1]  Defendant Mark Woodburn ("Woodburn")
served as President and Secretary and as a director of NHTC from

_____

[1]For purposes of deciding defendants' motion to dismiss,
"[t]he 'court accepts all well-pleaded facts as true, viewing them
in the light most favorable to the plaintiff.'"  *In re Katrina
Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal
quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v.
Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

2000 to October 2005, and Chief Financial Officer from April 1999 to August 2004. Defendant Terry LaCore ("LaCore") served as the Chief Executive Officer of Lexxus International, NHTC's chief operating subsidiary, from March 2001 to November 2005. He was an NHTC director for much of the same period. Defendant Randall Mason ("Mason") served as an independent director, chair of the Audit Committee, and a member of the Compensation and Nominating Committees for much of this period as well. Mason was charged with reviewing and helping to ensure the integrity of NHTC's financial statements as well as reviewing the adequacy of NHTC's internal accounting controls.

This lawsuit arises from related-party transactions that plaintiffs contend were not properly disclosed. The first series began in 2001, when LaCore and Woodburn placed Star Search International LLC ("Star Search") in a high-level position within NHTC's multi-level-marketing hierarchy. As a result, Star Search earned approximately $7.5 million in NHTC commissions from 2001 through August 17, 2005, and transferred (either directly or indirectly) one-third of these commissions to Woodburn and LaCore in their personal capacities. The second transaction at issue occurred in 2004, when NHTC loaned money to an entity controlled by Woodburn's parents, and incorrectly recorded the transaction as one involving an unrelated third party. Both sets of transactions were disclosed to the public for the first time in November 2005. After

disclosure, NHTC's common stock value decreased by 15.6%.

Lead plaintiffs Gary Zagami, Brian Kelly, and Rick Patmore purchased NHTC common stock at some time between April 16, 2002 and November 15, 2005. They assert two causes of action under the Securities Exchange Act of 1934 ("Exchange Act"). The first, against NHTC, Woodburn and LaCore, alleges that the failure to disclose the foregoing related-party transactions violated § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The second, against Woodburn, LaCore and Mason, seeks to hold these individuals personally liable as controlling persons, pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for NHTC's § 10(b) violation.

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.[2] They maintain that the complaint fails to allege adequately the elements of materiality, scienter, and causation, and that the claim is nothing more than one for breach of fiduciary duty that is not actionable under § 10(b). Mason also argues that he cannot be held liable as a "controlling person" under § 20(a).

---

[2]Defendants NHTC and Mason, and defendants Woodburn and LaCore, filed separate motions to dismiss and separate briefs. The issues they raise, however, are nearly identical, and they largely incorporate each other's arguments by reference.

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Id.* (quoting *Bell Atl.*, 127 S.Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]." *Bell Atl.*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted).[3]

---

[3]With respect to plaintiffs' allegations of scienter, these pleading standards are affected by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u. The court discusses the PSLRA and its effect *infra* at § V.

III

"A failure to disclose material information is actionable only when the defendant had an affirmative duty to disclose these facts." *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 179 (2d Cir. 2001); *see also, e.g., Basic Inc. v. Levinson,* 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."). Thus as an initial matter, the court must decide whether defendants had a duty to disclose the transactions in question.

Plaintiffs point to Item 404 of Securities and Exchange Commission ("SEC") Regulation S-K ("Item 404"), which at the time of the alleged omission required disclosure of "any currently proposed transaction, or series of similar transactions, to which . . . [NDHC was] to be a party, in which the amount involved exceed[ed] $60,000 and in which any [director, officer, or family member of a director or officer] had, or [would] have, a direct or indirect material interest[.]" 17 C.F.R. § 229.404 (amended Nov. 7, 2006 and Feb. 4, 2008).[4] Plaintiffs contend that Woodburn and LaCore had an "indirect material interest" in NHDC's selection and maintenance of Star Search as a distributor because they ultimately received part of the commission payments, and that disclosure of the transactions was therefore required. They likewise assert that

---

[4]Unless otherwise noted, the court will continue to cite the version of Item 404 that was in effect at the time of the events in question.

disclosure of the loan to Woodburn's parents was required under this regulation.

Defendants' sole response is that the transactions were too insignificant to require disclosure. The court disagrees for the reasons later explained in addressing the issue of materiality. *See infra* § IV. Accordingly, plaintiffs' complaint has sufficiently alleged a duty to disclose.

IV

The court next turns to the issue of materiality.

A

The breach of a duty to disclose does not result in liability under § 10(b) unless the undisclosed fact is "material." *Nathenson v. Zonagen Inc.,* 267 F.3d 400, 406-07 (5th Cir. 2001). "A fact is material if there is 'a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir. 1985)). "Materiality 'depends on the significance the reasonable investor would place on the withheld or misrepresented information.'" *Id.* (quoting *Basic*, 485 U.S. at 240). "'Materiality is not judged in the abstract, but in light of the surrounding circumstances.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (quoting *Krim v. BancTexas Group,*

*Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993)). "[T]o fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic,* 485 U.S. at 231-32 (internal quotation marks omitted).

B

The court first considers the materiality of the Star Search transactions. As alleged in plaintiffs' complaint, Woodburn and LaCore placed Star Search in one of the highest level positions within NHTC's multi-level marketing hierarchy. *See* Am. Compl. ¶ 22. Then, over the ensuing four-year period, Star Search earned approximately $7.5 million in commissions from NHTC, $2.5 million of which ultimately reached Woodburn and LaCore. *Id.* Woodburn and LaCore clearly had a significant interest in NHTC's selection of, and continuing business with, Star Search.

Defendants maintain that, considering NHTC's total business expenses, this interest was immaterial to investors. It is true that transactions that are quite small in proportion to a company's overall business may be immaterial as a matter of law. *See, e.g., Taubenfeld v. Hotels.com,* 385 F.Supp.2d 587, 593-594 (N.D. Tex. 2004) (Godbey, J.) (holding, in context of non-related-party transaction, that potential loss of $4 million was immaterial because it amounted to less than 1.5% of quarterly revenue). But

this premise is qualified by the fact that, "in some cases[,] the significance of an item may be independent of the amount involved. For example, amounts due to and from officers and directors, because of their special nature and origin, ought generally to be set forth separately even though the dollar amounts involved are relatively small." Financial Statements and Regulation S-X, 50 Fed. Reg. 49,529-02, at 49,530 n.3 (Dec. 3, 1985) (SEC explanation of rules) (internal quotation marks omitted). This is because "[t]ransactions involving related parties cannot be presumed to be carried out on an arm's-length basis, as the requisite conditions of competitive, free-market dealings may not exist." Financial Accounting Standards Board ("FASB"), *Statement of Fin. Accounting Standards No. 57 ("F.A.S. 57"),* ¶ 3 (1983) (available at http://www.fasb.org/pdf/fas57.pdf). "[D]isclosure is the overriding principle" governing related-party transactions, because while they are "not inherently bad, they have proven to be an easy and effective way . . . to misstate the economic substance and reality of financial transactions . . . [and] are difficult to measure economically because they may not be comparable[.]" *In re Am. Preferred Prescription, Inc.,* 1997 WL 158401, at *3 n.11 (Bankr. E.D.N.Y. Mar. 21, 1997) (discussing such transactions in bankruptcy context). Of course, not *all* related-party transactions are material. *See* FASB, F.A.S. 57 at ¶ 18 ("[I]nformation about transactions with related parties *that would make a difference in*

*decision making* should be disclosed so that users of the financial statements can evaluate their significance.") (emphasis added)). But it does not follow that, because certain dollar amounts might be immaterial in one context, they are necessarily immaterial in the context of the present litigation.

It also bears emphasis that the court is not charged with deciding whether the Star Search transactions were *in fact* material. This is an issue "usually left for the jury," because "materiality is a mixed question of law and fact." *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996). The court's role at this time is limited to determining whether, as plaintiffs have pleaded their complaint, the court can conclude that the Star Search transactions were immaterial *as a matter of law. See id.*

Applying these principles to the present case, the court cannot reach this conclusion. The cases on which defendants rely, both of which deemed certain related-party transactions immaterial as a matter of law, are distinguishable. *See Unite Here v. Cintas Corp.,* 2006 WL 2859279 (S.D.N.Y. Oct. 6, 2006); *Druskin v. Answerthink, Inc.,* 299 F.Supp.2d 1307 (S.D. Fla. 2004). In *Unite Here* the related party held a mere 4.5% interest in a transaction that involved only $70,000, which was especially small in light of the company's $2.8 billion in total expenses. *See Unite Here,* 2006 WL 2859279, at *9. Woodburn and LaCore, by contrast, held a 33-1/3% interest in a series of transactions with Star Search worth

$7.5 million—a much more significant interest in light of the fact that NHTC's yearly expenses ranged from $43.3 million in 2003 to $152 million in 2005.[5]

And in *Druskin* the court appeared to conflate its scienter and materiality analyses, deeming the related-party payments immaterial in part because "there [were] no allegations that the failure to disclose was intentional[.]" *Id.* at 1329. In this case, by contrast, plaintiffs have adequately pleaded scienter. *See infra* § V.

Defendants argue that the Star Search transactions did not affect NHTC's financial statements because the commissions paid to Star Search did not exceed the amounts due under NHTC's regular distributor compensation plan. But this is precisely the reason why disclosure is required in the first place. Without disclosure, investors cannot know the true nature of a transaction and may (or perhaps will) presume that it was conducted at arm's length. *See Am. Preferred Prescription*, 1997 WL 158401, at *3 n.11; FASB, *F.A.S. 57* at ¶ 3. Investors are also likely far more interested in related-party transactions because they may indicate that a conflict has affected whether they are in the best interest of the

_____

[5]The court takes judicial notice of this information pursuant to NHTC's and Mason's April 23, 2007 request, which was not opposed. Because the court has not relied on any other facts for which judicial notice has been sought, NHTC's and Mason's remaining requests for judicial notice, filed April 23, 2007 and July 23, 2007, are denied as moot.

corporation and its shareholders. Disclosure is thus essential to enable investors to evaluate correctly the information they see on the balance sheet.

C

In light of the preference for disclosing related-party transactions, the court is also unwilling to hold as a matter of law that the loan to Woodburn's parents was immaterial. Although the loan concerned less money ($256,000) than the Star Search transactions, the Item 404 threshold for disclosure was only $60,000, and is only $120,000 today. *See* Item 404, 17 C.F.R. § 229.404 (amended Nov. 7, 2006 and Feb. 4, 2008); 17 C.F.R. § 229.404 (effective Feb. 4, 2008). The court recognizes that these thresholds are not necessarily adopted using the same standard for materiality that governs § 10(b) claims, but they can inform the court's reasoning. The court thus concludes that the loan to Woodburn's parents was not immaterial as a matter of law.

V

Defendants also challenge the adequacy of plaintiffs' complaint with respect to the element of scienter.

A

Scienter is a required element of any securities fraud action. *Nathenson,* 267 F.3d at 406-07. "Scienter [is] a mental state embracing intent to deceive, manipulate, or defraud[,] . . . [and] proscribes knowing or intentional conduct." *Coates v. Heartland*

*Wireless Commnc'ns, Inc.*, 100 F.Supp.2d 417, 421 (N.D. Tex. 2000) (Fitzwater, J.) (citations and footnote omitted). "[P]laintiffs may establish scienter by demonstrating either intent or severe recklessness." *Fin. Acquisition Partners L.P. v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) (emphasis omitted); *see Southland Sec. Corp.,* 365 F.3d at 365 ("[T]he . . . state of mind requirement is severe recklessness or actual knowledge.").

The standards for pleading scienter are governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. "The PSLRA pleading standard for scienter is especially challenging for plaintiffs." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696-97 (5th Cir. 2005). "[T]o survive a motion to dismiss a securities-fraud action, plaintiffs must, *inter alia*, plead specific facts establishing a strong inference of scienter." *Fin. Acquisition Partners,* 440 F.3d at 287 (citing *Nathenson*, 267 F.3d at 407). "To qualify as "strong" within the intendment of § 21D(b)(2) . . . an inference of scienter must be more than merely plausible or reasonable——it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S.Ct. 2499, 2504-2505 (2007). "Circumstantial evidence can support a scienter inference." *Fin. Acquisition Partners*, 440 F.3d at 287(citing *Nathenson*, 267 F.3d at 408). The court "consider[s] all the facts and circumstances alleged to determine whether they, in

toto, raise a requisite strong inference of scienter." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 246 (5th Cir. 2003) (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002)). To allege scienter based on defendant's conscious conduct, "a plaintiff must plead strong circumstantial evidence." *Mortensen v. AmeriCredit Corp.*, 123 F.Supp.2d 1018, 1025 (N.D. Tex. 2001) (Fitzwater, J.), *aff'd*, 240 F.3d 1073 (5th Cir. 2000). To plead scienter based on recklessness, a plaintiff must demonstrate "an extreme departure from the standards of ordinary care . . . that present[s] a danger of misleading [shareholders,] . . . [and] which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Nathenson*, 267 F.3d at 408 (internal quotation marks omitted).

In deciding defendants' motions to dismiss, the court "accept[s] the facts alleged in the plaintiffs' complaint as true and constru[es] their allegations in the light most favorable to them." *Goldstein*, 340 F.3d at 244 (citing *Abrams*, 292 F.3d at 430). The court does not, however, "'strain to find inferences favorable to the plaintiff[s].'" *Id.* (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996) (alteration in original). "Nor [does the court] accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp.*, 365 F.3d at 361 (citing *Nathenson*, 267 F.3d at 406).

The court first addresses plaintiffs' allegations of scienter with respect to Woodburn and LaCore. Defendants maintain that the complaint does not adequately demonstrate that Woodburn and LaCore knew that the transactions were material. Specifically, they contend that the complaint fails to show that Woodburn and LaCore understood that these were related-party transactions and that they were significant enough to warrant disclosure.

Plaintiffs' complaint alleges that, shortly before hiring Star Search, Woodburn and LaCore dismissed a company that had been performing well in the same position. *See* Am. Compl. ¶¶ 88-90. They replaced this company with Star Search, who proceeded to give Woodburn and LaCore one-third of all commission payments it received. *See id.* at ¶¶ 21-22, and 90. These facts raise a strong inference that Woodburn and LaCore knew that they had a material interest in Star Search's hiring and maintenance as a distributor. The definition of a related-party transaction is clear: "any . . . series of similar transactions, to which . . . [NDHC was] to be a party, in which the amount involved exceed[ed] $60,000 and *in which any [director or officer, or family member of a director or officer] had, or [would] have, a direct or indirect material interest[.]*" Item 404, 17 C.F.R. § 229.404 (emphasis added). This certainly includes the transactions at issue, and, as the complaint is framed, it is implausible to suppose that Woodburn and LaCore

did not know this, given their high position within the company and their compliance with Item 404 on other occasions. *See* Am. Compl. ¶¶ 46-77. Moreover, a person in Woodburn's and LaCore's positions need not have memorized the language of Item 404 to have understood the nature of these transactions and that they should have been disclosed. Similarly, the complaint supports the strong inference that Woodburn and LaCore knew that the loan to Woodburn's parents was a related-party transaction, given the fact that NHTC disclosed several other related-party transactions involving family members of officers. *See* Am. Compl. ¶ 72.

Defendants' argument that Woodburn and LaCore believed the transactions too small to be material is unavailing. As alleged in the complaint, NHTC repeatedly disclosed a $70,000 loan to a former NHTC president and director. *See id.* at ¶¶ 46, 52. The repeated disclosure of this small transaction raises a strong inference that Woodburn and LaCore knew that the related-party transactions at issue in this case were material as well.

C

Because Woodburn and LaCore approved the SEC disclosures (or omissions) on which plaintiffs' lawsuit is based, plaintiffs' sufficient allegations of a strong inference that Woodburn and LaCore acted with scienter would ordinarily be enough to establish that NHTC acted with scienter. *See Southland Sec. Corp.*, 365 F.3d at 366 ("For purposes of determining whether a statement made by

the corporation was made by it with the requisite Rule 10(b) scienter . . . [the court] look[s] to the state of mind of the individual corporate official or officials who [made, issued, or approved] the statement[.]"). But NHTC contends that this case is different because Woodburn and LaCore were acting adversely to NHTC's interests, which it maintains establishes the common law "adverse agent" defense: "[a] principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another's purposes[.]" Restatement (Second) of Agency § 282(1) (1958).

It is true that a complaint that conclusively establishes the existence of a defense is vulnerable to a Rule 12(b)(6) attack. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1226, at 303 (3d ed. 2004) ("For example, a complaint in an action seeking specific performance for the sale of land that alleges an oral agreement defeats itself by showing a prima facie defense of the statute of frauds."). But plaintiffs' complaint—viewed favorably to them—does not establish the "adverse agent" defense proffered here.[6] Merely because Woodburn and LaCore engaged in related-party transactions that required disclosure does not compel the conclusion that they were "secretly

---

[6]The court assumes *arguendo* that this defense could apply in the present context.

. . . acting adversely to [NHTC] and entirely for [their] own or another's purposes." Restatement (Second) of Agency § 282(1).

Accordingly, the court concludes that plaintiffs have adequately pleaded scienter with respect to NHTC.

VI

The court next addresses whether plaintiffs' complaint adequately pleads loss causation, which is also required to support a claim for securities fraud.

Loss causation is the "causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 342 (2005). Plaintiffs aver that, on November 15, 2005, NHTC issued a press release disclosing the related-party transactions in question. *See* Am. Compl. ¶93. They do not, however, allege that NHTC's stock price declined as a result. Defendants move to dismiss on this basis.

In their response brief, plaintiffs explain that they mistakenly omitted a paragraph of the complaint that would have alleged that there was a 15.6% decline in NHTC's stock value after the disclosure. They request leave to amend their complaint to include this allegation. Defendants oppose the request, arguing that plaintiffs had ample opportunity to correct this mistake when they filed their first amended complaint. Defendants do not maintain, however, that plaintiffs' complaint would be deficient as amended.

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Moreover, "this court's approach in cases decided under the PSLRA has been to allow plaintiffs at least one opportunity to replead after the court has filed an opinion identifying defects in a complaint." *Milano v. Perot Sys. Corp.*, 2004 WL 2360031, at *11 n.18 (N.D. Tex. Oct. 19, 2004) (Fitzwater, J.) (citing *Coates v. Heartland Wireless Commnc'ns, Inc.*, 26 F.Supp.2d 910, 923 (N.D. Tex. 1998) (Fitzwater, J.)). Therefore, in the interests of justice, the court grants plaintiffs' request for leave to amend, and deems the amendments effective for the purpose of deciding these motions to dismiss.[7] Because defendants do not contend that the complaint would be deficient as amended,[8] the court declines to grant defendants' motions to dismiss on the basis of the failure adequately to plead

---

[7]It would serve little purpose to require plaintiffs to file an amended complaint and await another round of briefing before ruling on this issue. For this reason, the court reaches it now. Plaintiffs must nevertheless file an amended complaint that embodies the proposed change within 30 days of the date of this memorandum opinion and order.

[8]The court need not, therefore, address in detail whether plaintiffs have satisfied this circuit's standards for pleading loss causation. Nor does the court suggest a view regarding whether, in the context of class certification, plaintiffs will or will not be able to establish loss causation. *See, e.g., Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 269 (5th Cir. 2007) (holding that plaintiff must establish loss causation "at the class certification stage by a preponderance of all admissible evidence").

loss causation.[9]

                                    VII

NHTC and Mason also argue that the Supreme Court's holding in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462 (1977), precludes plaintiffs' § 10(b) claim.  The court disagrees.

*Santa Fe* merely stands for the proposition that a claim for breach of fiduciary duty cannot, absent proof of the necessary elements of a § 10(b) claim, of itself support an action for securities fraud.  *See id.* at 473 (stating that "the complaint [at issue] failed to allege a material misrepresentation or material failure to disclose," and holding that "Congress [did not] mean[ ] to prohibit any conduct not involving [such] manipulation or deception").  Because plaintiffs have adequately alleged each element of a § 10(b) claim, *Santa Fe* is inapposite.  *Santa Fe* does not, as NHTC and Mason suggest, prevent a claim simply because it involves a breach of a fiduciary duty.  *See id.*

*Kas v. Financial General Bankshares, Inc.,* 796 F.2d 508 (D.C. Cir. 1986), on which NHTC and Mason rely, supports the court's conclusion.  The *Kas* court held that *Santa Fe* did *not* preclude a § 10(b) lawsuit arising from a failure to disclose certain conflicts of interest.  *Id.* at 513-14.  It explained:

_____

[9]Plaintiffs also request that the court take judicial notice of NHTC's stock price on the days preceding and immediately following the release.  This request is denied as unnecessary.  The court accepts the allegations of the newly amended complaint as true and need not take judicial notice of these facts.

> *Santa Fe* certainly does not preclude liability
> under sections 10(b) and 14(a) where a . . .
> statement fails to disclose either that a
> member of management has a personal stake in
> the corporate decision being made or that some
> special relationship exists between a member
> of management and some other party with
> interests adverse to the shareholders. Facts
> of this nature have always been considered
> material, and a failure to disclose such facts
> states a claim under the federal securities
> laws. The violation . . . stems from the
> failure to disclose a fact that puts the
> shareholder on notice of a potential
> impairment of the director's judgment.

*Id.* at 513 (internal citations omitted).

## VIII

Finally, the court addresses the individual defendants' motions to dismiss the claims against them in their alleged capacities as "controlling persons" under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). "Section 20 imposes derivative liability upon controlling persons attendant to violations of both express and implied remedies under the [Exchange] Act." *Dennis v. Gen. Imaging, Inc.,* 918 F.2d. 496, 509 (5th Cir. 1990). It provides, in relevant part, that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable[.]" 15 U.S.C. § 78t(a).

Mason, Woodburn, and LaCore move to dismiss the § 20 claim

against them on the grounds that, as alleged in the complaint, NHTC (which is the "controlled person" in question) did not commit an underlying securities law violation. The court disagrees for the reasons already explained. Additionally, Mason argues that the complaint fails to establish that he had the requisite ability to control disclosure of the related-party transactions. The court disagrees with this as well.

"In determining whether a plaintiff has made a prima facie showing of 'control,' it is well-established that a plaintiff must plead facts indicating that the defendant 'had the requisite power to directly or indirectly control or influence corporate policy.'" *Kunzweiler v. Zero.Net, Inc.,* 2002 WL 1461732, at *13 (N.D. Tex. July 3, 2002) (Solis, J.) (quoting *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. Feb. 1981). This includes facts that demonstrate that "the defendant had an ability to control the specific transaction or activity upon which the primary violation is based." *Meek v. Howard, Weil, Labouisse, Friedrichs, Inc.,* 95 F.3d 45, 1996 WL 405436, at *3 (5th Cir. June 25, 1996) (per curiam) (unpublished table decision) (citing *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 620 (5th Cir. 1993)).

Plaintiffs' complaint alleges that Mason served both as independent director and chair of the Audit Committee for NHTC during the relevant period of nondisclosure. Am. Compl. ¶15. It avers that, as chair of the audit committee, "Mason was charged

with reviewing and helping to ensure the integrity of the Company's financial statements as well as reviewing the adequacy of the Company's internal accounting controls." *Id.* In their brief, plaintiffs supplement these facts with additional allegations that the Audit Committee was charged with reviewing and approving all related-party transactions, and that it was responsible for reviewing and discussing any fraud-related disclosures pertaining to management. Ps. Resp. Br. 48. Plaintiffs have already requested leave to file an amended complaint, and the court has granted this request. *See supra* § VI. The court presumes that, if granted such leave, plaintiffs would augment their complaint with the supplemental facts contained in their brief.

Viewing the allegations favorably to plaintiffs, the complaint (in its presumed amended form) adequately pleads that Mason had the ability to control disclosure of the related-party transactions. Mason argues that he could not in fact have exercised this control, given that he did not know about the transactions. But he cites no authority for the proposition that this is relevant to the question whether he is a "controlling person." The Fifth Circuit holds that "[l]ack of participation and good faith constitute an affirmative defense for a controlling person[,] [and that this must be kept distinct from the issue of control] since the burden of proof with respect to [the affirmative defense] is on the defendant, while the burden of establishing control is on the plaintiff." *G.A.*

*Thompson,* 636 F.2d at 958 (internal citations omitted); *see also* 15 U.S.C. 78t(a) ("[There is no liability if] controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.").

Accordingly, the court declines to dismiss Mason as a party based on a failure to adequately allege control.

\*     \*     \*

For the foregoing reasons, the April 23, 2007 motions to dismiss filed by NHTC and Mason, and by Woodburn and LaCore, are denied. NHTC's and Mason's April 23, 2007 request for judicial notice is granted in part and denied in part as moot. NHTC's and Mason's July 23, 2007 supplemental request for judicial notice are denied as moot. Plaintiffs' June 22, 2007 request for judicial notice is denied as moot. Plaintiffs must file their amended complaint——electronically or on paper——within 30 days of the date of this memorandum opinion and order.

**SO ORDERED.**

March 26, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE